UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

HEATHER T.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Case No. 3:20-cv-00966-YY

OPINION AND ORDER

YOU, Magistrate Judge

    Plaintiff Heather T. seeks judicial review of the final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g). For the reasons set forth below, that decision is AFFIRMED.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

**DISCUSSION**

Plaintiff contends the ALJ erred by (1) determining her onset date as September 3, 2019, and (2) rejecting the opinions of Dr. Fertig and Dr. Causeya.

**I.  Determination of Onset Date**

The ALJ found plaintiff had the following severe impairments: "obesity, fibromyalgia, seizure disorder, posttraumatic stress disorder (PTSD) major depressive disorder, borderline personality disorder, asthma, cervical disc disease with radiculopathy and sciatica (20 CFR 404.1520(c) and 416.920(c))." Tr. 1233. The ALJ recognized that plaintiff alleged an onset date of April 15, 2010. Tr. 1230. However, the ALJ found that plaintiff did not become disabled until September 3, 2019. Tr. 1233, 1270. Plaintiff contends that, in determining September 3,

2019, as the onset date, the ALJ impermissibly "ignored the bulk of the evidence between April 15, 2010, and December 31, 2015." Pl. Br. 6. In particular, plaintiff argues that "her seizures started in May 2012 and were documented between 2012 and 2015, "establishing that [she] was just as limited by them between 2012 and 2015 as she has been since then." *Id.* at 7. Plaintiff also argues she suffered severe and ongoing mental health symptoms between 2012 and 2015. *Id.* at 8.

The ALJ's finding that plaintiff was not disabled prior to September 3, 2019, must be supported by substantial evidence. *Swanson v. Sec'y of Health & Hum. Servs.*, 763 F.2d 1061, 1065 (9th Cir. 1985). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be more than a mere scintilla, but may be less than a preponderance." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012)).

In her decision, the ALJ explained that, "prior to September 3, 2019, the date the claimant became disabled, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c)." Tr. 1235. The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to September 3, 2019." Tr. 1237. Specifically, the ALJ found "[t]here are significant inconsistencies between the claimant's allegations of physical conditions that prevented her from working and the objective medical findings." *Id.*

A.   Seizures

This case was previously remanded in 2019 because a different "ALJ committed harmful error in failing to address significant portions of the record that are clearly inconsistent with both

3 – OPINION AND ORDER

the ALJ's conclusions and the evidence upon which he relied in forming those conclusions." Tr. 1383. The court's prior opinion and order made clear that, on remand, "the ALJ need not discuss each item of evidence, but the record should indicate that all evidence presented was considered." *Id.*

Upon remand, the ALJ issued a 43-page decision in which she painstakingly discussed plaintiff's history of seizures since 2012. Tr. 1239-41. Ultimately, the ALJ concluded that, while the record "establishes a history of seizure disorder," it "does not corroborate the frequency or severity of seizure activity alleged by [plaintiff], and shows improvement with treatment." Tr. 1239. Specifically, the ALJ observed that "initially plaintiff's seizures were diagnosed as nonepileptic when testing continued to show no seizure activity and she was consistently neurologically intact." *Id.* Further, plaintiff "was noncompliant with treatment recommendations and often left emergency rooms against medical advice, suggesting she was not finding any symptoms particularly limiting at that time." *Id.* The ALJ observed that throughout 2014 and 2015, plaintiff "reported few seizures, . . . also suggesting her seizures were generally controlled at that time." *Id.* The ALJ additionally observed that "in 2016, after she was diagnosed with a seizure disorder by objective studies and began appropriate treatment, the record shows she reported improvement particularly with controlling her grand mal seizures. She has continued to report varying frequencies of ongoing absence seizures, but these have been considered by her treating providers as being related to her mental conditions, in part because studies showed she was not having seizures when she reported feeling she was having one." *Id.* The ALJ concluded:

> The consistently unremarkable findings noted by the claimant's neurologists, as well as the repeated notations regarding the inability of the claimant and her mother to provide descriptions of the nature and frequency of the claimant's seizure activity, are not consistent with a disabling seizure disorder. In addition,

> the record shows that the claimant's seizures were largely controlled with medication. The claimant's seizure disorder has been considered and accounted for in the residual functional capacity assessment, which contains significant environmental limitations, and also accommodates some cognitive difficulties. However, the overall record shows the claimant's seizures were largely controlled by medication, and does not document frequent or debilitating seizure activity or medication side effects.

Tr. 1241-42. Thus, consistent with this court's prior opinion and order, the ALJ considered all of the evidence that was presented.

Plaintiff argues that "[a]lthough it took a number of years to determine [the cause of her seizures], they are documented throughout the record between 2012 and 2015, establishing that [she] was just as limited by them between 2012 and 2015 as she has been since then." Pl. Br. 7 (citing Tr. 604-13, 643, 648-49, 653, 655, 660, 664, 666-67, 677, 695, 699, 705, 708-09, 733, 801, 868, 873, 876-77, 900-01, 914-17, 928, 946-48, 1029-30, 1071-72, 1096-97, 1194-98, 1212-21, 1881, 2560, 2642-48, 3093-95, 3262-68, 3635- 38, 3650-52, 3717, 3720-21).

However, as noted, the ALJ articulated several reasons why the record prior to 2019 does not support a disability finding. These findings are supported by substantial evidence, which the ALJ cited extensively in her decision. *See* Tr. 1239-41. They include:

(1) "[C]onsistently unremarkable findings" by plaintiff's neurologists. Tr. 1239 (citing Ex. 11F/54, 15F/6 (normal EEG)), Tr. 1240 (citing Ex. B1F/52 (suspicion for a true seizure was low), Ex. 12F/12 (plaintiff was advised she did not have a seizure disorder based on her EEG), Ex. 16F/11 (October 2013 normal EEG), Ex. B9F (April 2017 normal neurological exam)).

(2) The fact plaintiff left emergency rooms without treatment. Tr. 1239 (citing Ex. 9F/4), Tr. 1240 (citing Ex. 15F/1).

(3) Plaintiff's noncompliance with medical treatment. Tr. 1239 (citing Ex. 11F/26 (plaintiff admitted she had not seen her neurologist), Ex. 11F/39 (plaintiff admitted missing

doses of medication)), Tr. 1240 (citing Ex. 12F/16 (no evidence the plaintiff followed through with neurology)).

(4) The possibility that medications and drug withdrawal were the reasons for seizures. Tr. 1239 (citing Ex. 11F/44), Tr. 1240 (citing Ex. 11F/25).

(5) The lack of seizures. Tr. 1240 (citing Ex. 11F/20 (no seizures in December 2012), Ex. 12F/32, 40 (less seizures July 2013; plaintiff denied seizures in August 2013 and felt they were associated with panic attacks), Ex. 20F/103 (in March 2014, plaintiff reported no seizures since December 2013), Ex. 17F/7, 22F (July 2015, first reported seizure in ten months), Ex. 17F/22F (January 2016, reported first seizure since last hospitalization), Ex. B9F (April 2017, reported no seizures with loss of consciousness in four months), Ex. B8F/115 (August 2017, medication was managed and no seizures for over a month; plaintiff felt the most stable she had ever been); Ex. B16F/23 (January 2018, reported feeling more stable and having less episodes); Ex. B18F/7 (April 2018, no seizures since fall 2017); Ex. B18F/22 (January 2019, plaintiff reported being seizure free); Ex. 31F/6 (May 2019, plaintiff could not say if she was having seizures or not, and neurologist opined it sounded like panic attacks triggered by stress); Ex. 31F/10 (August 2019, plaintiff reported only one nocturnal seizure a week and was not interested in making changes to treatment)).

In support of her argument, plaintiff cites to numerous portions of the record. Pl. Br. 7-8. But, if anything, these citations are ones that the ALJ also relied upon and they support the ALJ's conclusions. Tr. 604-13 (Ex. 9F/1-10 (May 2012 emergency department records)), Tr. 643 (Ex. 11F/20 (December 2012 records indicating "? seizure d/o" and normal EEG)), Tr. 648-49 (Ex. 11F/25-26 (October 2012 records indicating "not sure if seizure or dissociative episode," "Ø grand mal," and "has not seen neurologist")), Tr. 653 (Ex. 11F/30 (July 2012 records indicating

plaintiff had seizure[2])), Tr. 655 (Ex. 11F/32 (June 2012 records in which plaintiff "denies having any seizure activity")), Tr. 660 (Ex. 11F/37 (plaintiff reported seizure and requested narcotic pain medication[3])), Tr. 664 (Ex. 11F/41 (May 2012 follow up records)), Tr. 666-67 (Ex. 11F/43-44 (same)), Tr. 677 (Ex. 11F/54 (October 2012: normal EEG)), Tr. 695 (Ex. 12F/2 (February 2013 "? seizure disorder")), Tr. 699 (Ex. 12F/8 ("? seizure d/o – EEG was normal")), Tr. 705 (Ex. 12F/12 (March 2013: "Discussed does not have seizure d/o per EEG")), Tr. 708-09 (Ex. 12F/15-16 (April 2013: "? seizure yesterday," "? pseudoseizure")), Tr. 733 (Ex. 12F/40 (August 2013: "? seizures Ø episodes")), Tr. 801 (Ex. 14F/3 (November 2013 therapy records)), Tr. 868 (Ex. 14F/70 (March 2013 therapy records)), Tr. 873 (Ex. 14F/75 (same)), Tr. 876-77 (Ex. 14F/78-79 (March 2013 therapy records: plaintiff "is convinced that her seizures are related to her stress and sleep apnea")), Tr. 900-01 (Ex. 15F/2-3 (January 2013 emergency room records: "patient is somewhat vague in her history" of seizures, "has never been seen by a neurologist," "states she is on seizure medications, but does not know which ones," "patient's main complaint that she wants a 'pain pill' for her fibromyalgia back pain," "just repeatedly asked for pain pills," "no has not been followed by a neurologist and . . . has never been referred to a neurologist," "normal neurological exam," "eloped from the emergency department, stating that they would be seen somewhere else to get pain medicine")), Tr. 914-17 (Ex. 15F/16-19 (December 2013 emergency department records: normal EEG "which shows no evidence of epileptic activity")); Tr. 928 (Ex. 16F/11 (November 2013: normal EEG)), Tr. 946-48 (Ex. 17F7-9 (July 2015: "first seizure in 10 months")), Tr. 1029-30 (Ex. 18F/25-26 (August 2015 psychiatric progress note)), Tr. 1071-72 (Ex. 20F/4-5 (August 2014: plaintiff claimed having pseudoseizures)), Tr. 1096-97

---

[2] As the ALJ noted, plaintiff also had a normal EEG in 2012. Tr. 677 (Ex. 11F/54).
[3] Plaintiff also asked for Vicodin "because her whole body hurts from having a 'seizure' and she has fibromyalgia." Tr. 667. Her request was denied. *Id.*

7 – OPINION AND ORDER

(Ex. 20F/29-39 (December 2013 progress notes indicating an "atypical seizure" and "non-epileptic seizures" without further explanation)); Tr. 1194-98 (Ex. 22F/5-9 (July 2015 emergency department records: presented with "PTSD pseudoseizure" that occurred in bed while sleeping)), Tr. 1212-21 (Ex. 22F/23-32 (July 2015 follow up records for arm pain)), Tr. 1881 (Ex. 31F/10 (August 2019 epilepsy consultation: reports one nocturnal seizure per week)), Tr. 2560 (Ex. B2F/2 (January 2016 emergency department records: presented for pseudoseizures)), Tr. 2642-48 (Ex. B3F/59-65 (January 2016 behavioral health assessment)), Tr. 3093-95 (Ex. B7F/7-9 (Dr. Fertig letter[4])), 3262-68 (Ex. B13F/1-7 (April 2017 psychological testing)), Tr. 3635-38 (Ex. B19F/1-4 (Dr. Fertig medical source statement)); Tr. 3650-52 (Ex. B21F/6-8 (October 2015 new patient report: "Hx of seizure activity, with reportedly normal MRI and EEG")), Tr. 3717 (Ex. B25F/1 (October 2015 progress note: "routine med management f/u appointment")), Tr. 3720-21 (Ex. B26F/3-4 (June 2017 Dr. Fertig letter)).

In sum, the ALJ considered all of the evidence, including the evidence cited by plaintiff, but concluded that the onset date is September 3, 2019. Plaintiff proffers a different interpretation of the record, but because the ALJ's interpretation is reasonable and supported by substantial evidence, it must be upheld.

    **B.**    **Mental Health**

As with plaintiff's seizure history, the ALJ extensively recounted—over the span of 12 single-spaced pages—the evidence regarding plaintiff's mental health history. Tr. 1242-1254. The ALJ concluded that, while there was a "long history of treatment for multiple mental health symptoms of varying diagnoses, beginning as a child after she was sexually abused," there were "also significant inconsistencies between [plaintiff's] allegations of mental conditions preventing

---

[4] The ALJ's assessment of Dr. Fertig's opinion is discussed later.

her from working and findings and statements throughout the medical evidence of record." Tr. 1242. Specifically, the ALJ concluded that "prior to the established onset date of disability, [plaintiff's] mental symptoms were not as limiting as she now alleges." *Id*.

In particular, the ALJ observed "there is nothing in the record to support significant mental health issues around her alleged onset date of disability." *Id*.

> Instead, she reported being stable and having her symptoms largely controlled until late 2011, when she had an increase in her reported symptoms after she was involved in altercation with her mother and subsequently became homeless. Thereafter, she experienced multiple psychosocial situations in particular with her relationships with her boyfriend and mother, financial issues, and housing issues, that led to waxing and waning of her symptoms. The claimant has admitted her increased symptoms are much stress and situation related. However, the claimant presents generally with only moderate limitations even at times of increased symptoms and her treating providers consistently indicate she copes rather well despite her situational stressors and is a good self advocate.

*Id.*

The ALJ cited to records from November 2010 when plaintiff "reported her anxiety was controlled with her medication, and denied depression," Tr. 1243 (citing Ex. 11F/74), and records from June 2011 when she presented with no acute distress, had clear insight, and was hopeful. *Id.* (citing Ex. 8F/12). As the ALJ observed, plaintiff was involved in an altercation with her mother in December 2011 that led to a criminal conviction. *Id.* However, the ALJ noted that records showed plaintiff was pleasant and engaged in therapy, and motivated to participate in mental health counseling. *Id.*

The ALJ further observed that, in 2012, plaintiff "reported having drastic emotional and psychological fluctuations and anger," "[h]er thought patterns were at times widely scattered," she felt she was not doing well overall and struggling with homelessness, she had "racing thoughts and difficulty concentrating," she felt overwhelming depression, and she had trouble focusing and a lot of panic attacks. Tr. 1244. However, the ALJ also observed that the record

9 – OPINION AND ORDER

during this time showed plaintiff was "noted to be a skillful communicator," she was cooperative with normal speech, mood, and affect, her judgment was normal, she denied past or present suicidal ideation, she presented with calm mood and positive affect, she was coherent and able to focus for short periods, she was good natured, she was enthusiastic about learning coping skills, she had a positive mood and was optimistic, she was smiling, alert, pleasant, and cooperative, she was only mildly anxious, she had good insight, and her depression was "actually related to opiate withdrawal." *Id.* The ALJ made similar detailed observations regarding the years 2013 through 2018. *See* Tr. 1244-1253. These findings support the ALJ's conclusion that plaintiff "presents generally with only moderate limitations even at times of increased symptoms." Tr. 1242.

> The ALJ also concluded:
>
> [T]he severity of the claimant's reported symptoms often does not match her presentation or mental status examinations findings. For example, she will report significant memory problems, but will be described as having intact memory and having well organized thoughts, or she describes having significant anger and rage issues, but is noted to be friendly, open and pleasant and appears calm, positive and in a good mood." She also at times presents with tangential or circumstantial speech, yet her thoughts are linear and she is engaged. Likewise, she often reports suicidal ideation, but yet consistently reports no intent or plan and her treating providers feel she has low motivation to harm herself. Her report of symptoms also varies significantly from provider to provider and she often reports having and presents with more significant problems to her mental health providers than to her medical providers, who generally note normal mental status examination findings. Additionally, some treating and examining providers have specifically noted her symptoms are quite embellished and not consistent with her presentation or reported activity abilities.

*Id.* The ALJ elaborated further on these conclusions in her detailed 12-page account of plaintiff's mental health history. *See* Tr. 1242-1254.

> Additionally, the ALJ observed:
>
> [C]laimant also has had some increased symptoms at times corresponding to noncompliance with treatment; however, when consistent on her medications and

> attending therapy her symptoms are largely controlled and she has reported improvement. She actually has been prescribed multiple medications, but treatment for her symptoms does not mean she was incapable of working, especially when considering other factors as pointed out in this decision such as her activities of daily living and her general presentation to providers.

Tr. 1242. Again, the ALJ cited extensively to the record to support these conclusions. *See* Tr. 1242-1254; *see*, *e.g.*, Tr. 1245 (citing Ex. 12F/40 ("in August, she reported her medications were really helping with her nightmares")); *id.* ("on follow up with her therapist a few days later, . . . her mental health symptoms had stabilized"); Tr. 1247 (in October 2014, she "felt she was benefiting from medication"); Tr. 1248 (in November 2014, "she felt good about her medication regimen" and "she was doing better with her current mental health medication regimen"); *id.* (in June 2015, she "felt relatively stable on her medication regimen"); *id.* (in December 2015, plaintiff reported that although "some of her medications were helpful," she "wanted to stop taking all of them," and later that month "was off all her mental health medications and was having nightmares all the time, passive suicidal ideation, regularly dissociating, and feeling she had no memory secondary to repression").

Finally, the ALJ observed that, "[d]espite her lengthy mental health history, [plaintiff] did not have any psychiatric hospital admission until a voluntary four day stay in May 2019, after which she reported improvement in her symptoms." Tr. 1242. The ALJ elaborated on this finding by citing to mental health records from June 2019 when plaintiff reported "she was happier," plaintiff's "medication helped her focus and made her less tense and better able to engage in more positive self talk," she no longer had suicidal ideation, and she presented as alert, well groomed, engaged, cooperative, and having fair eye contact. Tr. 1254. Again in June 2019, plaintiff denied active suicidal thoughts and, although she was tearful and anxious, her thought process was linear and logical, and she was engaged and cooperative. *Id.* The ALJ observed

11 – OPINION AND ORDER

that, in July 2019, plaintiff felt her medications were helping and, "in July and August 2019, she indicated she had interest and pleasure doing things and she did not feel down, depressed or hopeless. She denied suicidal ideation and she was pleasant and well appearing, in no acute distress, and was appropriately groomed and dressed." *Id.* "It was noted her prognosis was fair to good as her engagement had improved in the past year, she presented as highly motivated in her recovery and she was medication compliant." *Id.* (citing Ex. 27F/1).

In sum, the ALJ's conclusion that the onset date for plaintiff's mental health impairments did not occur before September 3, 2019, is supported by substantial evidence and therefore must be upheld.

## II.     Medical Opinion Evidence

Plaintiff next contends the ALJ erred by improperly rejecting the opinions of Dr. Fertig and Dr. Causeya.

### A.     Relevant Law

Plaintiff filed for benefits on March 11, 2013.  Under the law in effect at that time, if no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.[5]  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

---

[5] For claims filed on or after March 27, 2017, controlling weight is no longer given to any particular medical opinion, such as that of a treating physician. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017).

"Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons supported by substantial evidence in the record." *Id.* (treating physician) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Orn*, 495 F.3d at 632 (quoting *Reddick*, 157 F.3d at 725); *Widmark*, 454 F.3d at 1066.

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (citation and internal quotation marks omitted). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

**B.     Dr. Fertig**

Dr. Fertig, plaintiff's treating physician, completed a medical source statement on February 25, 2019. Tr. 3635-38. He also wrote a letter describing plaintiff's seizure history and diagnosis on May 31, 2017, Tr. 3093-95, a letter in support of an extension for an academic paper and testing on June 13, 2017, Tr. 3720, and a letter advocating that plaintiff have "a stable living environment to adhere to a healthier lifestyle" on September 11, 2017. Tr. 3721. The ALJ gave little weight to Dr. Fertig's opinions. Tr. 1262. However, the ALJ gave great weight to the

13 – OPINION AND ORDER

contradictory opinions of the state agency medical consultants, Dr. Leslie Arnold and Dr. William Nisbet. Tr. 1265-66. Because Dr. Fertig's opinion is contradicted, the ALJ could reject it as long as she supplied specific and legitimate reasons supported by substantial evidence.

The ALJ explained that the statements in Dr. Fertig's letters were "not given great weight" because they "contain minimal information regarding [plaintiff's] specific abilities and functional limitations" and instead "speak more to possible limitations and side effects, and to temporary accommodations." Tr. 1262. Indeed the letters contain no details about plaintiff's specific abilities and functional limitations; therefore, they do not support Dr. Fertig's medical source statement in that regard.

Next, the ALJ gave "little weight" to Dr. Fertig's "opinion overall" for "several reasons." *Id*. The ALJ further explained that Dr. Fertig's opinion was "not given great weight," because it "is not consistent with his treatment records or the record as a whole." Tr. 1263.

The ALJ found Dr. Fertig's "treatment records consistently document unremarkable examination findings, and there are no objective findings that would support the significant limitations he assessed regarding standing, walking, sitting, lifting, and carrying." Tr. 1262-63. The ALJ observed that "[p]rior to the established onset date of disability, [plaintiff] did not specifically allege substantial difficulties with these activities, and examinations repeatedly noted intact strength and sensation, as well as normal gait." Tr. 1263. Dr. Fertig opined that plaintiff could stand/walk for less than two hours, sit for about two or four hours, and rarely lift less than ten pounds. Tr. 3637. However, as the ALJ correctly observed, the record lacks support for Dr. Fertig's opinion in this regard. *See*, *e.g.*, Tr. 605 (Ex. 9F/2 (normal range of movement, normal strength), Tr. 901 ("Strength is 5/5 times 4. . . The patient ambulates with a steady gate."), Tr. 1003 ("motor strength normal upper and lower extremities, gait normal"), Tr 2611 (Ex. B3F/28

("Normal muscle bulk and muscle tone. . . Strength is 5/5 throughout," normal gait, normal coordination).

The ALJ also observed:

> Dr. Fertig's statement regarding limitations to low stress work, additional breaks, and absences are not well-supported and appear to be based primarily on the claimant's subjective reports, which are not entirely consistent with the record that reflects infrequent seizure activity and daily activities that are not consistent with frequent breaks or absences. Furthermore, Dr. Fertig repeatedly noted improvement and limited seizure activity, as well as the fact that the claimant was not able to provide detailed reports regarding her seizures, so the limitations he assessed related to the claimant's seizures are not well supported and are less persuasive. Moreover, in late May 2019, he specifically indicated he could not clearly state if she as having seizures or not. (Exhibit 31F/6.)

Tr. 1263.  Again, the ALJ recounted plaintiff's seizure history in detail.  The fact that Dr. Fertig's opinion contradicted plaintiff's record of seizures, including even Dr. Fertig's own records, was a specific and legitimate reason to reject his opinion.  *See*, *e.g.*, Tr. 1873 (Ex. 31F/2 (noting one seizure occurred when plaintiff was not wearing her CPAP appliance during sleep and that "[o]verall her seizure control and EEG background appear improved")), Tr. 1874 (Ex. 31F/3 ("she is not sure if she is having seizures or not" and "changes the topic frequently")), Tr. 1877 (Ex. 31F/6 ("She also has events which sound more like panic attacks which she seems to confuse with her seizures.")); Tr. 2611 (Ex. B3F/28 ("MRI brain was unremarkable")); Tr. 1198 (Ex. 22F/9 ("unremarkable evaluation"; "no additional seizure activity here")); Tr. 2193 (Ex. B9A/8 (noting April 2017 visit to OHSU was "unremarkable physical exam w/o neurological deficit")).

### C.     Dr. Causeya

Dr. Causeya conducted a psycho-diagnostic evaluation of plaintiff on October 8, 2016. Tr. 1053.  The ALJ gave Dr. Causeya's opinion "little weight" because it was "inconsistent with the substantial weight of the evidence."  Tr. 1260.

First, the ALJ discounted Dr. Causeya's opinion because she "appears to have relied quite heavily on [plaintiff's] subjective allegations," which the ALJ found were not persuasive. Tr. 1260. Plaintiff argues there is "no reason to believe that Dr. Causeya relied 'heavily' on [her] subjective statements, as she not only conducted objective testing of [her], but also reviewed her mental health records spanning a number of years." Pl. Br. 13.

Plaintiff told Dr. Causeya that she was "experiencing memory problems," "does not recall when she has spent time with people," "must write down all of her appointments or she will forget them," and "[s]ometimes she forgets where she is going and at other times she forgets people's names." Tr. 1058. Dr. Causeya concluded that plaintiff suffers from "moderate to severe" memory problems. Tr. 1061. However, as the ALJ observed, Dr. Causeya's conclusion is undermined by her testing, which showed plaintiff's memory was in the low average to average range. Tr. 1060.

Also, as the ALJ observed, Dr. Causeya's opinion is undermined by the record, which indicates that plaintiff was "doing well in school." Tr. 1123. The ALJ elaborated on this extensively in her decision:

> For example in August 2011, she was in an accounting program at community college. (Exhibit 11F/4.) Then in January 2012, the claimant reported she had consistently been successful at attending school and achieving passing grades. (Exhibit 18F/9.) In 2014, she completed her Associate's degree. (Exhibit B4F.) Then in April 2015, she reported she had not missed any classes, she was keeping up in school and she was getting C's. (Exhibits 18F/36, 20F/58.) In May 2015, she reported she was doing well in school, and in September and October 2015, she reported being a business major in college, and was taking indigenous studies classes. (Exhibit 18F/2, 19F, 20F/56.) Then in January 2016, she reported taking a lot of classes and in February 2016, she reported school was good and she got an A on a test. (Exhibit B5F/52, 56, 78, 84, 90.) In March 2016, she reported was going to college for accounting, and again reported she was doing well in school. (Exhibit B1F/48, B5F/97.) In May and October 2016, she continued to attend college courses in business school, and in December 2016, she reported getting good grades in school, even though she could be excessively argumentative. (Exhibit B5F/150, 216, 264.) In May 2017, she reported she was a senior at a

> college business school, and in June 2017, she reported doing well in school with A's and she had received a scholarship. (Exhibit B6F/1, B8F/63, 78.) In July and August 2017, she was still in college and doing well. (Exhibit B8F/31, 113. 115.) In September 2017, she reported school was going well and she was majoring in multiple topics. (Exhibit B18F.) In February, April, August and November 2018, she was again reported being in school and doing well. (Exhibit B16F/28, B17F/95, B18F/8, 15.) In January 2019, she was starting school again as a senior. (Exhibit B16F/39.) Then in May 2019, she withdrew from school, but in November 2019, she reported being in school again. (Exhibits 11F/3, 25F/43, 45, 49, 51.) The claimant's consistent school attendance and earning good grades, evidence an ability to perform at least simple routine tasks and a capability to understand and recall basic information at a minimum.

Tr. 1255-56.

For similar reasons, the ALJ found that Dr. Causeya's "finding of moderate to severe limitation in sustained concentration and pace, and that [plaintiff] would not be able to complete a normal workday and workweek without interruptions from symptoms of PTSD and depression is inconsistent with her level of psychiatric treatment at the time and [plaintiff's] activities of daily living, such as going to college classes." Tr. 1260. The ALJ also found that Dr. Causeya's "finding the claimant would not be able to work in proximity with others without being distracted or experiencing PTSD triggers is inconsistent with [plaintiff's] ability to take college classes, participate in an environmental group, and her report of engaging with other students and professors." Tr. 1260. These were all specific and legitimate reasons, supported by substantial evidence, to reject Dr. Causeya's opinion.

## ORDER

The Commissioner's decision is AFFIRMED.

DATED May 2, 2022.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

17 – OPINION AND ORDER